UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALVIN SMITH, JR.                                    CIVIL ACTION

VERSUS                                               NO. 12-354

MICHAEL J. ASTRUE, COMMISSIONER                      SECTION "J" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION;
## FINDINGS AND RECOMMENDATION

Calvin Smith, Jr., proceeding pro se, seeks judicial review pursuant to Section

405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner

of the Social Security Administration (the "Commissioner"), denying plaintiff's claim

for disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. §§ 405(g),

423.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and Local Rule 73.2(B).

Smith filed in this court a copy of a letter dated July 23, 2012, after the instant

lawsuit was filed, which he wrote to the Commissioner.  Attached to the letter are copies

of two documents purportedly from the Social Security Administration.  The court has

considered the letter as plaintiff's memorandum in support of his claim.  Record Doc.

No. 14.  Defendant filed a timely reply memorandum.  Record Doc. No. 16.

## I.   <u>PROCEDURAL HISTORY</u>

In his letter brief, Smith claims that he applied for DIB in 1991, alleging disability since that year, and that he was found eligible for benefits, but the benefits were never paid to him. Record Doc. No. 14. He attached to the letter two "Benefits Planning Query (BPQY)" forms, apparently from the Social Security Administration, dated August 31, 2011 and July 28, 2009, respectively. Record Doc. No. 14-1, at pp. 1-2.

On November 23, 2009, Smith filed an application for DIB, alleging disability since May 1, 1991 based on glaucoma, high blood pressure, diabetes, stomach ulcers and arthritis. (Tr. 11, 105-06, 117, 130, 142, 145-46). After his application was denied at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"), which was scheduled for May 25, 2010. When he appeared for the hearing without representation, the ALJ continued the hearing at plaintiff's request, so that he could seek representation. (Tr. 46-47, 51-52).

Smith again appeared without representation at the rescheduled hearing on August 12, 2010. The ALJ notified him that he was entitled to only one continuance to obtain representation, which had already been granted. Smith testified at that hearing. (Tr. 19-20). On October 25, 2010, the ALJ issued a decision denying plaintiff's application for benefits for the time period of May 1, 1991, the alleged onset date, through September 1, 1997, the date when Smith was last insured for DIB. (Tr. 11-16).

The Appeals Council denied review on December 16, 2011, and the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

II.    <u>STATEMENT OF THE ISSUE ON APPEAL</u>

Smith, who is proceeding pro se, does not assign any specific legal errors. He states in his letter that he was found eligible for DIB in 1991 when he first applied, but he did not receive any payments. He says that he should have been paid at least the difference between his VA benefit payments and the amount that was due to him from Social Security. Plaintiff states that he was told by Social Security staff to reapply and allege a disability onset date of May 20, 1999, even though his actual onset date was 1991, because "that was as far back as they could go." Record Doc. No. 14.

The ALJ's opinion reflects that she considered plaintiff's application for DIB from his alleged onset date of May 1, 1991 through September 1, 1997. This court will review the entire record to determine whether substantial evidence supports the ALJ's findings.

The two "Benefits Planning Query (BPQY)" forms dated August 31, 2011 and July 28, 2009, which Smith attached to his letter, Record Doc. No. 14-1 at pp. 1-2, are not in the administrative record of his claim. Record Doc. No. 9. Accordingly, the court treats plaintiff's filing of these two documents as a motion for leave to supplement the

record to submit new evidence. For the reasons discussed below, IT IS ORDERED that

the motion is DENIED.

III.    ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

A.    Smith last met the insured status requirements of the Act on September 1, 1997.

B.    He did not engage in any substantial gainful activity between his alleged onset date of May 1, 1991 and his date last insured of September 1, 1997.

C.    Through the date last insured, plaintiff did not have any impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months. Therefore, he did not have a severe impairment or combination of impairments. 20 C.F.R. § 404.1521 et seq.; Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).

D.    Smith's medical treatment records from the Veterans Administration ("VA") all post-date his date last insured of September 1, 1997. There is no medical evidence in the record before September 1, 1997.

E.    Smith failed to establish the existence of a severe impairment before the date last insured.

F.    Plaintiff's statements concerning the intensity, persistence and limiting effects of his medically determinable impairments are not credible to the extent they are inconsistent with a finding that he has no severe impairment or combination of impairments prior to the date last insured.

G.  Smith was not under a disability from May 1, 1991, the alleged onset date, through September 1, 1997, the date last insured.

(Tr. 13-16).

IV.  ANALYSIS

A.  Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2010). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1] The five-step

_____

[1]The five-step analysis requires consideration of the following:
    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions

---

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." <u>Martinez</u>, 64 F.3d at 174.

B.     <u>Factual Background</u>

Plaintiff did not testify under oath at the first hearing on May 25, 2010, which was continued at his request so that he could seek representation. (Tr. 46-47). He signed a form acknowledging that only one continuance would be granted for that purpose. (Tr. 88).

Smith stated on the record at the first hearing that he had received a letter from the Commissioner saying that his disability benefits had been approved, but he left the letter at home. He said he was later told by someone at the Social Security office that he could not receive any unpaid past disability benefits once he began receiving Social Security retirement benefits at age 62. He said that this is why he applied for back disability benefits. (Tr. 48).

Plaintiff stated that he has "been going through this since 1991 . . . and then they told me . . . I'm eligible for Social Security Disability and they gave me the paper stating I would get Social Security Disability." He said that his benefits were approved in 1990, even if the documentation of that approval has disappeared from the Social Security computer. He again stated that he has a letter saying that he was approved, which he could copy and bring with him to the next hearing. (Tr. 49).

At the hearing on August 12, 2010, plaintiff testified that he has glaucoma and has been going to the VA for medical treatment since before 1991, when he was working for Bell South. (Tr. 21). He said he had never received SSI (Supplemental Security Income) for disability, but had received disability benefits from the VA. He testified that "the VA told me don't worry about Social Security because I couldn't get both of them." He said he applied for Social Security retirement benefits when he reached age 62 and "then they told me, said that they had been looking for me since 1991 because when I filed in 1991 they owed me some back money. . . . But then when I went to talk to the Social Security Office they told me they didn't have no records of that onset right there. . . . They said they didn't have no records in their case." (Tr. 22).

Smith testified that he began receiving VA benefits in 1991, but that Social Security told him in 1995 or 1997 that he was not sick enough to get Social Security. He said that Bell South terminated him because the VA had determined that he was disabled and his doctors told him that he could not work any more. He stated that he no longer receives VA benefits of $600 per month, which were cut off when he started receiving Social Security. He said that he was supposed to receive $1,100 per month, according to a piece of paper that he showed the ALJ. The ALJ responded that "the claim that shows up on this piece of paper here is an SSI claim," not a DIB claim, which is the type of claim that was currently before the ALJ. (Tr. 23). Smith said that, when the VA cut

off his benefits, "the Social Security Office told me that they owed me back money, which was behind the $600 and $1,100 by $500 a month or whatever." He stated that Social Security employees told him that he could not receive any money unless he found all of the paperwork from 1991, but that in any case they could only "onset it back 10 years. They couldn't onset it back 20 years. . . . And so, they owed me $500 a month from 1991 from whatever date that they owed me because the VA was giving me $600 and they were supposed to be giving me $1,100."

The ALJ told Smith that the claim before her was not an SSI claim, but a DIB claim based on his earnings. She advised him that the date he was last insured for benefits was in 1997 and that, for this claim, she must determine whether the medical evidence in his file showed that he was disabled before his last insured date.

Plaintiff testified that he became ill in 1990. (Tr. 24). He said that when he talked to the Social Security office, a female employee showed him a copy of a paper, but that her supervisor told the employee not to give him a copy "because it's too far back, but they had copies of it in the record." He said they had already given him the paper that he had showed to the ALJ. He alleged that "the supervisor made [the employee] take all of that information out of the computer and told me to go back and find your records." Smith stated that he told the supervisor that all his records had been destroyed in the Hurricane Katrina flood, but she responded that there was nothing the Social Security

office could do about it. He said the Social Security computer now has no record of his 1991 claim. (Tr. 25). He stated: "I know they told me that they didn't have that in the record, but as you can see I got a copy of it."

Smith testified that he was 63 years old on the date of the hearing and that he lives alone. He said he had a high school education, some trade school and military service. He stated that his only income is Social Security retirement benefits, but he receives health care at the VA hospital. (Tr. 26-27). He said his VA benefits stopped in November 2008 when he turned 62 and began receiving Social Security retirement benefits. He testified that he had been receiving a non-service connected pension from the VA because the VA had determined that he was disabled and unable to work. He said he receives about $10 to $12 a month in food stamps. (Tr. 27). He stated that he is not currently working and that he last tried to work in 1997, but he could hardly see and his "arthritis and everything was hurting so bad I couldn't work."

The ALJ noted that she had reviewed the 400-plus pages of plaintiff's medical records, which go through 2010, but that there are very few records from 1997. (Tr. 28). Plaintiff said he had tried to get additional medical records from the VA, but they could not find any earlier records. (Tr. 29).

The ALJ stated that the VA medical records include a CT scan of plaintiff's cervical spine in January 1997, which revealed minimal degenerative changes with no

disc protrusions, and evidence of thoracic scoliosis in 1997.  She noted that his records also reveal a history of substance abuse, psychiatric problems, hypertension and chronic low back pain, but she said that she did not see much else before 1997.  (Tr. 30).

Smith testified that the man at the Social Security office who gave him the piece of paper which he had showed to the ALJ told him that they had been looking for him since 1991, they owed him back money and they could not give it to him for 20 years, but they could go back 10 years.  Plaintiff said this man told him that Social Security owed him back money from 1999, instead of 1991, because they could only "onset it back 10 years."  He stated that this was why he was trying to get the money.  (Tr. 31).

The ALJ told plaintiff that his claim before her did not relate to any "back pay," but was only a DIB claim based on his earnings, for which she would have to find him disabled before September 1, 1997.  She advised him to talk to Social Security again to get more information about whatever records Social Security has regarding a prior claim and possibly file a different claim if he believed that he was owed back benefits, because that claim was not before her.  (Tr. 33-34).  Smith responded that he had already done that and that the supervisor had told him that Social Security had no records in their computer, even though the female employee at the desk had told him that "it was in the computer until they got back there and did something to the computer and got it out of

there because they wanted me to go back and re-file for Social Security Disability all over again. . . . They wanted me to re-file again from [1991]." (Tr. 34).

Plaintiff testified that, in 1997, he had "the same thing" that he has now. He said he was taking medication in 1997 for hypertension and high blood pressure and that his toenails and feet were turning black, but the VA gave him "some kind of stuff and they told me to take Vick's vapor rub on my toes and feet and everything and that kind of cleared it up because they thought [they] . . . were going to cut my toes off or something back then" because of diabetes. He said he has type II diabetes, for which he takes pills, but he has never taken shots for it. He stated that he had all of these problems when he worked as a repairman for the phone company. He testified that the company told him he could no longer work for it "because I couldn't see too good [sic] and they couldn't have me working for them – going to people's houses because I was doing all kind of wiring and everything. I couldn't do all of that. . . . I worked for them people [sic] 17 years and them people just throw [sic] me out of there like I had never worked for them a day." (Tr. 35).

Smith stated that his VA benefits were terminated when he started receiving Social Security retirement benefits at age 62. He said all of his medical problems have remained the same since he left the telephone company until today. He testified that he has had diabetes, arthritis and glaucoma since 1991, for which he has "been on that same

medication all that time, but the telephone company didn't want me on medication . . . you couldn't be on any kind of medication and working for them at the same time." (Tr. 36).

C.     Vocational Expert Testimony

A vocational expert, Cindy Harris, testified that plaintiff had performed no work in the past 15 years. The ALJ asked Harris to assume a 50-year old claimant (which was plaintiff's age in 1997) with the same education and past work experience as Smith and with the residual functional capacity to lift or carry up to 20 pounds occasionally and 10 pounds frequently in light work as defined by the regulations, to climb occasionally and to balance, stoop, crouch, kneel and crawl frequently. (Tr. 37). Harris opined that such a hypothetical person could perform light, unskilled work that is available in the regional and national economy, such as cashier, counter clerk and order filler. She stated that her testimony was consistent with the Dictionary of Occupational Titles. Plaintiff was given the opportunity to question the vocational expert concerning her testimony. (Tr. 38-40).

D.     Plaintiff's Motion for Leave to Supplement the Record

Smith attached to his letter two "Benefits Planning Query (BPQY)" forms dated August 31, 2011 and July 28, 2009, Record Doc. No. 14-1 at pp. 1-2, which are not in the administrative record. Accordingly, the court treats plaintiff's filing of these two documents as a motion for leave to supplement the record to submit new evidence.

It is well established that this court may <u>not</u> issue factual findings on new evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010); <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, I must determine whether this case should be remanded so that the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); <u>Ferrari</u>, 435 F. App'x at 314; <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

New evidence must be material to be the basis for a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." <u>Castillo v. Barnhart</u>, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing <u>Ripley</u>, 67 F.3d at 555); <u>accord</u> <u>Joubert</u>, 287 F. App'x at 383.

In addition, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quotation omitted); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2007) (citing 28 U.S.C. § 405(g)).

In the instant case, the new evidence is not material. The two Benefits Planning Query forms each have a column headed Social Security Disability Insurance. Under that column, there are printed lines indicating "Type of Benefit: Disabled Worker," "Current Status: Current Pay," "Date of Disability Onset: 5/20/1999," and "Full Amount: $1,109.50." On the form dated July 28, 2009, the line after "Full Amount" indicates a "Net Amount: $1,109,00," while the "Net Amount" on the form dated August 31, 2011 is $994.00. There is also a handwritten notation at the bottom of the August 31 form that reads: "You are changed from disability to retirement because you reached 62 years of age."

Assuming without deciding that these two documents are authentic copies of documents produced by the Social Security Administration, I find no reasonable possibility that the documents would have changed the outcome of the ALJ's decision. First, both documents post-date Smith's sixty-second birthday. As he testified, he began receiving Social Security retirement benefits when he attained the age of 62. Even if the information on the Benefits Planning Query forms relates to DIB, rather than to

16

retirement benefits, the disability onset date on the forms is May 20, 1999. This date is 18 months <u>after</u> the expiration of plaintiff's disability insured status on September 1, 1997, which was the end date of the period covered by the ALJ's decision. Therefore, the documents are immaterial to the relevant time period of May 1, 1991 through September 1, 1997.

Second, the July 28, 2009 Benefits Planning Query may be the "paper" that Smith showed to the ALJ at the August 12, 2010 hearing, which the ALJ reviewed. Had the ALJ believed that this document was relevant to her determination of plaintiff's claim for DIB for the time period between May 1, 1991 and September 1, 1997, she would have incorporated it into the record at the hearing, as she did with the other exhibits. The August 31, 2011 Benefits Planning Query repeats the same information contained in the July 28, 2009 form, with the exception that the later form shows a decreased net amount and has a handwritten notation at the bottom. To the extent that the ALJ already reviewed the printed information on these two forms, there is no reasonable possibility that the documents would have changed the outcome of her decision.

Accordingly, plaintiff's motion for leave to supplement the record is DENIED.

E.    Plaintiff's Appeal

At the second step of the sequential analysis, the ALJ held that, through the date last insured of September 1, 1997, plaintiff did not have any impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months. Therefore, he did not have a severe impairment or combination of impairments and was not disabled. The ALJ based this finding on the virtual lack of any medical evidence prior to September 1, 1997, the date when Smith was last insured for DIB.

Substantial evidence supports the ALJ's findings. Plaintiff bears the burden at step two of the sequential evaluation to prove by medical and other evidence that he has a severe impairment, as defined by the Commissioner's regulations and the case law. Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. The Fifth Circuit considers an impairment non-severe if it is "'a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" Id. at 391 (quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)) (internal quotation omitted); see 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The ALJ in the instant case cited the relevant standard and explained why she found that plaintiff's impairments were not severe. My review of the voluminous medical records (many of which are duplicates) confirms the ALJ's finding that the record contains very little medical evidence dated before September 1, 1997, when Smith was last insured for DIB, and that the evidence does not substantially support a finding that plaintiff's impairment or combination of impairments was severe.

Smith testified that the VA had determined that he was disabled and had awarded him veteran's disability benefits since 1991 until he turned 62. Even if the VA's determination was in the record, which it is not, its decision regarding disability is not binding on the Commissioner. The Commissioner's regulations state that a decision by "any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us." 20 C.F.R. § 404.1504. "[T]he determinations of other agencies, while persuasive, do not bind the Social Security Administration" because they are based on different governing laws and regulations. Loza, 219 F.3d at 393 (citing 20 C.F.R. §§ 404.1504, 404.1512(b)(1)-(6)).

As the ALJ stated, there are very few medical records dated before Smith's last insured date. The medical records before or within 12 months after that date include

diagnoses of polysubstance abuse dated July 15, 1998 and depressive disorder NEC (not else classified) on April 9, 1998. (Tr. 179-80, 363). A consultation note on July 27, 2005 indicates that Smith had been treated about 10 years earlier for polysubstance abuse. (Tr. 342). Progress notes from May 1, 1998 indicate that plaintiff had a history of lower back pain, psychiatric problems and substance abuse. (Tr. 590). Medications lists indicate that Smith was prescribed antidepressants, muscle relaxants, prescription pain medication and over-the-counter nonsteroidal anti-inflammatory drugs in 1996, 1997 and 1998. (Tr. 228-43).

X-rays of plaintiff's hands on November 7, 1995 demonstrated an old fracture deformity involving the right fifth metacarpal bone from a 1989 fracture, but were otherwise normal. (Tr. 266-67, 270-72). A chest x-ray report dated November 19, 1997, revealed thoracic scoliosis. (Tr. 261-63). Right shoulder and cervical spine x-rays on January 15, 1997 were normal. A CT scan of plaintiff's cervical spine on January 21, 1997 demonstrated "minimal degenerative changes" with no disc protrusions or neural foraminal stenosis. (Tr. 264-66).

A physician's progress note on July 24, 2002 summarized the results of x-rays of plaintiff's right shoulder, lumbar and cervical spine that had been taken on March 13, 2002. As in 1997, the right shoulder x-ray was normal. The cervical spine x-ray

revealed degenerative disc space narrowing and mild spondylosis[2] at C4-5, C5-6 and C6-7, which appears to be consistent with the 1997 CT scan or, at most, may reveal some degeneration of Smith's cervical spine condition <u>after</u> the relevant time period. Plaintiff's lumbar spine x-ray showed mild Grade I spondylolisthesis[3] at L4-5 with associated degenerative disc narrowing, Grade I-II[4] spondylolisthesis at L5-S1 with marked disc space narrowing, degenerative spondylosis at L4-5 on the right side, and could not exclude spondylosis at L5-S1. (Tr. 255-57, 533). No other diagnostic studies document the existence of any significant lumbar spine problems before 1997.

Contrary to plaintiff's testimony that his problems have been the same since 1997, a physician's progress note dated May 7, 2003 states that Smith had "[n]ew onset type 2 [diabetes mellitus]. Previously had glucose intolerance." (Tr. 522-23). Nothing in the record supports Smith's testimony that his toenails and feet were turning black and his doctors "thought [they] . . . were going to cut my toes off or something back then"

---

[2]Spondylosis means either ankylosis (immobility and consolidation) of a vertebral joint, or is a general term for degenerative spinal changes due to osteoarthritis. <u>Dorland's Illustrated Medical Dictionary</u> 91, 1684 (29th ed. 2000) (hereinafter "<u>Dorland's</u>").

[3]Spondylolisthesis is the displacement of one vertebra over another. <u>Id.</u> at 1684.

[4]Grade I indicates 0 to 25 percent subluxation (partial dislocation) of adjacent vertebral bodies, while Grade II indicates 25 to 50 percent subluxation. These two stages are considered mild to moderate, respectively. Sally Pullman-Mooar, MD, <u>Nontraumatic Spinal Subluxation</u> (June 2008), in <u>The Merck Manual for Health Care Professionals</u>, http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/neck _and_back_pain/nontraumatic_spinal_subluxation.html?qt=Spondylolisthesis&alt=sh.

because of diabetes. However, his medication lists include prescriptions for an antifungal cream to "apply to both feet twice a day" and a hydrocortisone cream to "apply to affected area three times a day," which were both prescribed on November 8, 1995. (Tr. 239). No medical evidence supports a diagnosis of diabetes or of vascular or neurological complications of diabetes in Smith's feet before 2003.

At a visit on June 21, 2000, Smith reported that he had been in a motor vehicle accident on February 18, 2000, with resultant neck pain and that he had had chronic lower back pain for "several years with no neurological problems." He told the doctor that his current medications were effective to relieve his pain. (Tr. 577).

No medical evidence in the record establishes that Smith suffered from any severe impairment or combination of impairments between May 1, 1991 and September 1, 1997. Thus, the record as a whole provides substantial support for the ALJ's finding that plaintiff did not have a severe impairment or combination of impairments prior to his last insured date of September 1, 1997 and was not disabled as of that date.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[5]

New Orleans, Louisiana, this _____23rd_____ day of October, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[5]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.